UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          **ORDER**
                                                            07-CR-186S

KEVIN L. TODD,

                        Defendant.

## I. INTRODUCTION

On October 12, 2007, Defendant Kevin L. Todd filed a motion to suppress physical evidence seized from his apartment. By way of Report, Recommendation and Order dated May 1, 2009, the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, recommended that Defendant's motion be denied. Defendant then filed objections to Judge Schroeder's Report, Recommendation and Order.

Presently before this Court is Judge Schroeder's Report, Recommendation and Order and Defendant's Objections thereto. For the reasons discussed below, Defendant's motion to suppress evidence is denied.

## II. BACKGROUND

**A. Facts**[1]

On May 18, 2007, shortly before 9:00 a.m., New York State Parole Officers arrived

---

[1] The following facts are taken from Judge Schroeder's Report, Recommendation and Order (Docket No. 124), Defendant's objections (Docket No. 127), the Government's response (Docket No. 134), Defendant's reply (Docket No. 137), and the Transcripts from the suppression hearings, which are designated "Tr. 1" (hearing dated November 29, 2007), and "Tr. 2" (hearing dated October 10, 2008).

1

at 341 Landon Street, Buffalo, New York ("341 Landon"), armed with a parole warrant for the arrest of Janine L. Heitzinger, a parolee who had absconded from New York parole supervision. (Docket No. 124, p. 2; Docket No. 134, pp. 6-7.) The Officers received a tip that Heitzinger was living at 341 Landon, and sought to execute the parole warrant for her arrest. (Docket No. 127, p. 2.) Three Hundred Forty-One Landon consists of an upper and a lower apartment. The Officers received information that Heitzinger was in the lower apartment. (Docket No. 124, p. 3.)

Upon arriving at 341 Landon, the Officers knocked on the door to the lower apartment. (Docket No. 134, p. 7.) Heitzinger was resting on a bed in the first floor bedroom at the time. (Docket No. 124, p. 4.) A gun was on the bed where she lay. (Id.) Upon hearing the knocking, Heitzinger fled to the basement and hid under a mattress. (Id.) Heitzinger left the gun on the bed in the first floor bedroom. (Id.)

After no one answered the door, the Officers knocked on the adjoining door that led to the upper apartment. (Id., p. 3.) Defendant Kevin Todd opened the door. (Id.) Parole Officer Kelly Funderburk explained to Todd that they were looking for Heitzinger. (Docket No. 127, p. 2.) Funderburk asked Defendant in what apartment he resided, and Defendant replied "the lower." (Docket No. 124, p. 3.) Funderburk then asked Defendant if he had a problem with the Officers entering the lower apartment in order to "look around for [Heitzinger]." (Docket No. 127, p. 2.) Defendant responded "no," and unlocked the door to the downstairs apartment. (Docket No. 124, p. 3; Tr. 1, pp. 72, 80.)

Upon entering the premises, the Officers observed "drug paraphernalia on the table [in the living room] in the form of baggies, residue, things like that . . . as well as a large amount of female belongings and clothing, giving the impression that [Heitzinger] had been

2

staying there." (Docket No. 124, p. 4; Tr. 1 27, 75.) Funderburk remained with Defendant while the other Officers searched the lower apartment for Heitzinger. (Docket No. 134, p. 9.) Defendant informed Funderburk that Heitzinger had previously been at the lower apartment, but she was not there at the present moment because the two had a fight the night before. (Docket No. 124, p. 3; Docket No. 134, p. 8.) Nonetheless, the Officers continued the search, and they eventually found Heitzinger hiding under a mattress in the basement. (Docket No. 124, pp. 9-10.)

Funderburk then asked Defendant if the Officers could continue the search, and Defendant granted them permission. (Docket No. 124, pp. 4, 11, 12, 15.) The search continued, and the Officers eventually found a gun in a bedroom in the lower apartment, under the bed mattress. (Docket No. 124, p. 5.) At that point, Funderburk asked Todd to stand up, and placed him in handcuffs for reasons of safety.

On August 7, 2007, Defendant and Heitzinger were charged in a multi-count indictment. Defendant was charged with having violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1) and 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 3). (Docket No. 1.) Following indictment, Defendant moved to suppress the gun found in the bedroom. (Docket No. 21.[2]) Heitzinger pled guilty to a One Count Felony Superseding Information, and was sentenced by this Court on November 18, 2008.

---

[2] In connection with the motion, the Government filed a response (Docket No. 24), Judge Schroeder held two hearings – November 29, 2007, and October 10, 2008 – and the parties also filed post-hearing memoranda. (Docket Nos. 92, 93, 97, 98.)

**B. Defendant's Motion to Suppress and Judge Schroeder's Report, Recommendation and Order**

Defendant claims that he granted the Officers permission to enter the lower apartment solely for the limited purpose of searching for Heitzinger. Once Heitzinger was found, Defendant argues that the Officers' lacked authority to continue searching the apartment. Although the Government contends that Defendant granted the Officers additional permission to continue searching, Defendant argues that Funderburk did not ask for Defendant's permission to keep searching, but simply told him that the Officers were going to continue doing so. Because Defendant claims that he never consented to a secondary search, Defendant argues that the gun, which was discovered during this search, must be suppressed.

On May 1, 2009, Judge Schroeder issued a Report, Recommendation and Order, recommending that Defendant's motion to suppress be denied. (Docket No. 124.) In relevant part, Judge Schroeder found that Funderburk asked Defendant for permission to continue the search (Docket No. 124, pp. 4, 11, 15), and Defendant consented by stating "no problem" and "go ahead" (Id., p. 4, 11). Thereafter, Defendant timely submitted objections. (Docket No. 127.[3])

### III. DISCUSSION

**A. Standard of Review**

A district court reviews those portions of a report and recommendation to which a

---

[3] The Government filed a response to Defendant's objections (Docket No. 134), Defendant replied (Docket No. 137), and on July 10, 2009, this Court entertained oral argument (Docket No. 139).

4

party has timely objected under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(c). The district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record. United States v. Singleton, 608 F. Supp. 2d 397, 401 (W.D.N.Y. 2009) (citing White v. Fischer, No. 04-CV-5358, 2008 U.S. Dist. LEXIS 69110, 2008 WL 4210478, at *1 (S.D.N.Y. Sept. 12, 2008)). "The clearly-erroneous standard also applies if a party makes only 'conclusory or general objections, or simply reiterates his original arguments.'" Singleton, 608 F. Supp. 2d at 401 (quoting Barratt v. Joie, No. 96-CV-324, 2002 U.S. Dist. LEXIS 3453, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)).

After reviewing the Report and Recommendation and the objections thereto, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. Analysis**

*1. The Fourth Amendment*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Although warrantless searches of one's home are *per se* unreasonable, an exception exists when "the authorities have obtained the voluntary consent of a person authorized to grant such consent." United States v. Elliot, 50 F.3d 180, 185 (2d Cir. 1995).

"To ascertain whether consent is valid, courts examine the 'totality of all the circumstances' to determine whether the 'consent was a product of that individual's free and unconstrained choice, rather than a mere acquiescence to a show of authority.'" United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995) (citing United States v. Wilson,

5

11 F.3d 346, 351 (2d Cir. 1993)); see also Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).  The government bears the burden of establishing that consent was voluntarily given by a preponderance of the evidence.  Garcia, 56 F.3d at 422.

### 2. *Judge Schroeder Considered the Full Record in Finding that Defendant Consented to the Secondary Search*

Defendant argues that Judge Schroeder erroneously found that Funderburk asked for permission to continue searching. (Docket No. 127, p. 3.) Defendant claims that Judge Schroeder's decision was the result of improper and partial consideration of the record. (Id., p. 4.)

In support of his position that Judge Schroeder relied on improper evidence, Defendant notes that Judge Schroeder attributed Funderburk's statement of "go ahead" to Defendant, when this statement was actually Funderburk urging defense counsel to "go ahead" after he interrupted her question during cross-examination. (Docket No. 124, p. 11.)  Thus, Defendant argues that it was improper for Judge Schroeder to consider this statement as evidence of Defendant's consent.

It is true that Judge Schroeder construed Funderburk's statement of "go ahead," as evidence that Defendant granted the Officers permission to continue searching his apartment.  But whether Funderburk's "go ahead" comment was in fact a prompt to defense counsel to continue after interruption, or was actually something Defendant said to the Officers at the time of the incident, is insignificant because Judge Schroeder also relied on additional evidence.  Specifically, Judge Schroeder found that Defendant replied "no problem," in response to Funderburk's question to Defendant about continuing the

6

search. (Docket No. 124, p. 11.) And Judge Schroeder's reliance on this latter statement is supported by the record, as demonstrated by the following exchange between Funderburk and the prosecutor on direct examination:

> Q: Once they – once your fellow officers brought Ms. Heitzinger up from the basement, did you have – did you ask [Defendant] any additional questions?
> A; My question to him, could we continue the search. His answer was, no problem.

(Docket No. 124, p. 11; Tr. 1, p. 75.)

Defendant also argues that Judge Schroeder relied on the incomplete testimony of Officer Funderburk. (Docket No. 127, p. 4.) In particular, Defendant claims that Judge Schroeder failed to consider the following exchange between Funderburk and defense counsel during cross-examination:

> Q. Okay. When you asked Mr. Todd again if you could do a more extensive search, did you tell him - -
> A. Go ahead.
> Q. Did you tell him that you wanted to do more of a search for possible parole violations that she may have committed?
> A. No, ma'am.
> Q. Okay. Did you tell him why you wanted to continue to search his apartment after you found Janine Heitzinger?
> A. No, ma'am.
> Q. All right. What exactly did you say to him?
> A. I explained to him we were going to continue to search. His response was, no problem. I didn't say what particularly we were searching for. I just told him we were going to continue to search.
> Q. So you told him you were going to continue the search?
> A. Yes, Ma'am.

(Docket No. 127, pp. 4-5; Tr. 1, p. 84.)

But simply because Judge Schroeder did not cite this portion of Funderburk's testimony, does not mean that Judge Schroeder failed to consider it. In fact, this Court notes that Defendant raised this issue in a post-hearing memorandum of law, and cited the

7

specific portion of Funderburk's testimony it presently cites. (Docket No. 92.) Thus, Judge Schroeder was on notice of this issue immediately prior to issuing his decision, and this Court finds it unlikely that it was something Judge Schroeder overlooked.

The Report, Recommendation and Order demonstrates that Judge Schroeder considered the parties' competing views on this issue, weighed issues of credibility, and simply found Funderburk's version of events more persuasive. Although not specifically citing Funderburk's cross-examination, Judge Schroeder nonetheless held:

> Nothing Officer Funderburk said to the defendant indicated a command to consent to the continuation of the search of the premises.
> . . .
> I find that Officer Funderburk did request further permission from the defendant to continue a search of the premises and the totality of the circumstances, including the exchange between Officer Funderburk and the defendant, establishes that the defendant's additional consent was voluntarily given thereby making the subsequent search and seizure of the gun valid.

(Docket No. 124, pp. 14-15.)

Lastly, Defendant's attempt to downplay the significance of Funderburk's testimony on direct examination is without merit. Defendant argues that Funderburk "took his cue from the prosecutor, who prompted him with the question 'did you ask him any more questions?'" (Docket No. 137, p. 2.) Defense counsel did not object to this question at the time it was posed, and this appears to be a proper question.

. . .

For the foregoing reasons, this Court denies Defendant's objection to Judge Schroeder's Report, Recommendation and Order, and concurs in Judge Schroeder's finding that Funderburk asked Defendant for his permission to continue searching the apartment.

### *2. Defendant Did Not Acquiesce*

Defendant's second objection to Judge Schroeder's Report, Recommendation and Order is dependent upon his first objection. In other words, Defendant claims that he did not consent to a continuation of the search, but merely acquiesced to Funderburk's assertion that the Officers were going to continue searching the apartment. (Docket No. 127, pp. 6-7.) Because this Court agrees with Judge Schroeder that Funderburk asked for, and was granted permission, rather than asserting the Officers' intention to continue, Defendant's second objection fails.

### IV. CONCLUSION

This Court has thoroughly reviewed *de novo* Judge Schroeder's Report Recommendation and Order, Defendant's objections thereto, and the applicable law. Upon due consideration, this Court finds no legal or factual error in Judge Schroeder's Report and Recommendation and Order. Accordingly, Defendant's Objections are denied and this Court will accept Judge Schroeder's Report Recommendation and Order in its entirety.

### V. ORDERS

IT IS HEREBY ORDERED, that Defendant's Objections to Judge Schroeder's Report, Recommendation and Order (Docket No. 127) are DENIED.

FURTHER, that Judge Schroeder's Report, Recommendation and Order (Docket No. 124) is ACCEPTED.

FURTHER, that Defendant's Motion to Suppress Evidence (Docket No. 21) is DENIED.

SO ORDERED.

Dated: August 5, 2009
       Buffalo, New York

                                              /s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                             United States District Judge